IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

LIBERTE CAPITAL GROUP,

       Plaintiff,       Case No. 5:99 CV 818

  -vs-

                    MEMORANDUM OPINION

JAMES A. CAPWILL, et al.,

       Defendant.

KATZ, J.

This matter is before the Court on the Insurers' Motion for Reconsideration and Modification of the July 15, 1999 and February 13, 2002 Orders. (Doc. No. 2526.)  Also before the Court are the Receiver's Opposition (Doc. No 2576), the Insurers' Reply (Doc. No. 2581), the Receiver's Surreply (Doc. No. 2585) and the Receiver's Correction (Doc. No. 2586).

This Court has jurisdiction pursuant to 28 U.S.C. § 1331.  For the reasons that follow, the Insurers' motion is granted in part and denied in part.

## BACKGROUND

For purposes of brevity, the background of the underlying litigation will not be repeated as it was succinctly noted by the Sixth Circuit in *Liberte Capital Group, LLC v. Capwill*, 462 F.3d 543, 547-550 (6th Cir. 2006).  In that appeal the Sixth Circuit considered a blanket stay of litigation as well as litigation exception orders in determining whether the district court abused its discretion in finding Swiss Re Life & Health America, Inc.'s, Southwestern Life Insurance Company's, Reassure America Life Insurance Company's, Valley Forge Life Insurance Company's and Continental Assurance Company's (hereinafter "Insurers") initiation of litigation in a Delaware state court to be sanctionable conduct.  The Sixth Circuit affirmed the adjudication

on sanctions but declined to address the issue of due process concerns regarding matured policies since they were not raised with the district court. Specifically, the Sixth Circuit stated:

> Due process concerns with respect to the Insurers rights under the disputed policies may also be raised with the Receivership court through a direct request to that court. The finding of contempt below was premised on the Insurers' violation of a general injunction against actions taken without leave of the district court overseeing the Receivership. Nothing precludes the Insurers from requesting leave of the district court to dispute the monies held on matured, but fraudulently obtained, policies and raising the attendant due process concerns in that request.

*Id.* at 556.

Following that decision, the Insurers filed the instant motion for reconsideration in April 2007. In August 2007, the parties[1] advised the Court they were in engaged in mediation efforts aimed at a global resolution, engaging in limited discovery to further resolution efforts which would not begin in earnest until the end of 2007. Meanwhile, the parties completed briefing the issues raised by the Insurers' motion. At a status conference at the end of June 2008, the Court indicated it would withhold a ruling on the motion pending completion of the mediation, asking for a status report at the end of August 2008. In separately filed status reports, both sides were in agreement that mediation was at a standstill and that a ruling on the pending motion would assist the parties in moving forward with the resolution process. The Defendants requested oral argument in their August status report and after several continuances, on May 18, 2009, the Court heard oral argument on the motion.

## MOTION FOR RECONSIDERATION

---

[1] *Wuliger v. Swiss Re Life & Health America, Inc., et al.*, Case No. 3:07 CV 270 (N.D. Ohio).

Although the Insurers request reconsideration under Fed. R. Civ. P. 54(b), a motion for reconsideration is often treated as a motion made under Rule 59(e). *McDowell v. Dynamics Corp. of America*, 931 F.2d 380 (6th Cir. 1991); *Shivers v. Grubbs*, 747 F. Supp. 434 (S.D. Ohio 1990). The purpose of a motion to alter or amend judgment under Fed. R. Civ. P. 59(e) is to have the court reconsider matters "properly encompassed in a decision on the merits." *Osterneck v. Ernst and Whinney*, 489 U.S. 169, 174 (1988). This rule gives the district court the "power to rectify its own mistakes in the period immediately following the entry of judgment." *White v. New Hampshire Dept. of Employment Security*, 455 U.S. 445, 450 (1982). Generally three major situations justify a district court altering or amending its judgment: (1) to accommodate an intervening change in controlling law; (2) to consider newly discovered evidence; or (3) to prevent a clear error of law or to prevent a manifest injustice. *Gencorp, Inc. v. American Intern. Underwriters,* 178 F.3d 804, 734 (6th Cir. 1999). It is not designed to give an unhappy litigant an opportunity to relitigate matters already decided; nor is it a substitute for appeal. *Roger Miller Music, Inc. v. Sony/ATV Publishing, LLC,* 477 F.3d 383, 395 (6th Cir. 2007); *citing Sault Ste. Marie Tribe of Chippewa Indians v. Engler,* 146 F.3d 367, 374 (6th Cir. 1998).

As noted by the Sixth Circuit, the issue of due process in conjunction with policy rights was not raised by the Insurers until the appeal of the contempt issue. Based upon the Sixth Circuit's above-quoted language, the Insurers now seek reconsideration and modification before the district court. The current situation does not qualify as a change in controlling law, new evidence previously unavailable or to correct a clear error of law. Rather, since the argument is now properly before this Court and seeks clarification with regard to a property interest,

3

reconsideration is appropriate to prevent a manifest injustice.  As the adjudication of this issue does not resolve all of the claims, under Fed. R. Civ. P. 54(b), the Insurers' motion for reconsideration is granted.  The Court now turns to the arguments regarding modification of orders.

## MODIFICATION OF THE PRIOR ORDERS

*A. The July 1999 and February 2002 Orders and Related Orders*

The order of July 15, 1999 was a judgment entry appointing a receiver to take charge of Viatical Escrow Services, LLC ("VES") and Capital Fund Leasing ("CFL"), stating the objective of the receivership as "preserv[ing] and increas[ing] the estate for the benefit of all creditors, investors and parties to this case."  (Doc. No. 132 at p.2.)  The Order also set forth the responsibilities of the receiver attendant to his position and included the following blanket stay:

> It is further ORDERED that all creditors, claimants, bodies politic, parties in interest and all sheriffs, marshals, and other officers, and their respective attorneys, servants, agents, and employees, and all other persons, firms and corporations be, and they hereby are, jointly and severally, enjoined and stayed from commencing or continuing any action at law or suit or proceeding in equity to foreclose any lien or enforce any claim against VES and/or CFL, or their property, or against the Receiver in any court.  Said entities are further stayed from executing or issuing or causing the execution or issuance out of any Court of any writ, process, summons, attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with, or enforcing any claim or lien upon, any property owned by or in the possession of the said Receiver, and from doing any act or thing whatsoever to interfere with the Receiver in the discharge of his duties in this proceeding wit the exclusive jurisdiction of this court over said properties and said Receiver.

(Id. at pp. 5-6.)

On February 13, 2002 and in response to the Alpha Receiver's motion to protect its investors from satellite litigation, the Court amended the order of appointment to include the same language to enjoin litigation against the Alpha estate.  (Doc. No. 1416.)

4

The litigations exceptions contained in the Orders of April 13, 2001, in the *Jamieson*[2] litigation and April 19, 2004, in the case *sub judice*, were characterized by the Sixth Circuit as follows:

> The 2004 order did not purport to create new rights of the parties with respect to the policies or permission to sue. Therefore, the litigation exception "clearly" and "unambiguously" permits suit only against the Receiver and never abrogated the prior injunction on suits against Alpha.
> . . .
> We find that the April 13, 2001 litigation exception does not authorize suits for claims against money assets held in the Receivership estate, which includes claims for off-sets related to matured policies already paid to the Receivership. All claims requesting damages from the Receivership estate or an off-set from monies due to the Receivership estate were therefore clearly and unambiguously barred by the general injunction.

*Liberte Capital Group*, 462 F.3d at 555.

Finally, in this Court's Order of April 6, 2005, finding Southwestern Life Insurance Company, Reassure America Life Insurance Company and Valley Forge Life Insurance Company in contempt, the Court instructed as follows:

> The insurers may file suit against the Receiver in a federal or state court in Ohio to litigate their financial obligations regarding any non-matured policies within the Receivership estate provided that they limit their claims to conform to the limited litigation exception previously articulated by this Court as clarified by this Order.

(Doc. No. 2334.)

*B. The Parties' Positions*

The Insurers seek modification of the July 15, 1999 and February 13, 2002 ("injunctive orders") to allow them to assert any and all defenses to claims against them in *Wuliger v. Swiss Re Life & Health America, Inc.*, Case No. 3:07 CV 270. At oral argument, the Insurers reiterated

---

[2] *United States v. Jamieson*, Case No. 3:00 CV 7312 (N.D. Ohio)

three arguments in favor of modification: (1) to adopt the interpretation of the orders as premised by the Receiver would be to deny the Insurers due process of law; (2) modification, as advocated by the Insurers, is consonant with the Court's orders not to foreclose rights or defenses; and (3) enjoining the Insurers from asserting any and all defenses or claims would work an unfair prejudice upon them.

In opposition the Receiver advocates keeping in place the injunctions which have been in place for several years and been affirmed by the appellate court as being clear and unambiguous. He further argues that a weighing of the equities is a proper approach in making this determination and a modification, as requested by the Insurers, would undermine the agreements between the two investor classes, with significant repercussions.

*A. Due Process*

As noted by the Sixth Circuit, "[t]o the extent that a party has a colorable claim against a receiver or the entities in the receivership, due process demands that the claimant be heard." *Liberte Capital Group,* 462 F.3d at 552.  The Insurers request the ability to assert setoff claims or other policy defenses as to the case brought by the Receiver against them, and the inability to be heard on this issue, they contend, is violative of their due process rights.

"A property interest 'can be created by a state statute, a formal contract, or a contract implied from the circumstances.'" *Liberte Capital Group v. Capwill,* 421 F.3d 377, 383 (6th Cir. 2005).  The Insurers entered into contracts for insurance with viators, issued those policies, collected premiums and, in certain cases, paid death benefits.  The property interest they assert, the right to setoff claims on benefits already paid and the ability to assert that claim is a valid interest created by the insurance contract.

6

Upon finding a property interest, "a predeprivation hearing of some sort is generally required to satisfy the dictates of due process." *Id. quoting Leary v. Daeschner*, 228 F.3d 729, 742 (6th Cir. 2000).  As noted above, there has been extensive briefing by both sides on this issue as well as oral argument.  Thus, the Insurers have been afforded ample time and opportunity to present their position both on briefs and in oral argument with regard to their property interest.

*B . Consideration of the Competing Interests*

The Sixth Circuit has provided considerations to be made in a circumstance such as the one at issue:

> In addressing claims on the receivership estate brought before it, the district court may consider both the merits of the individual claim and the equities attendant to the situation. *See id.* The inability of a receivership estate to meet all of its obligations is typically the *sine qua non* of the receivership.  In adjudicating claims on the receivership estate, or making a decision to permit satellite litigation to resolve any claims, a district court may therefore consider such factors as litigation costs as a tax on the receivership estate, the ability of the parties to resolve their claims in the receivership court versus elsewhere, any culpability on the part of the claimant, and the implications for any satisfaction of an award on other claimants to the estate. *See id; Universal Fin.,* 760 F.2d at 1037-38.

*Liberte Capital Group*, 462 F.3d at 552-553.

Looking at the considerations as enunciated by the Sixth Circuit, this Court finds that the litigation costs would be increased by lifting the injunctions or exceptions.  This would be true not only for the litigation currently in play against the Insurers but would undoubtedly inspire other claimants to raise this issue.  This factor weighs in favor of the Receiver.

The ability of the parties to resolve their claims in the receivership court versus elsewhere is not a consideration in this dispute.  Therefore, this factor favors neither side.

With regard to culpability on the part of the claimant, this factor requires some discussion.  It is the Receiver's position that the Insurers were in a superior position, as contrasted with investors, to determine that there was something afoot with these policies.  At

7

oral argument, the Insurers argued they were in the dark about any shenanigans because they did not police their policies after issuance nor were they aware of any problems until there were claims submitted upon the death of the viator. The Court finds such a position disingenous.

According to the docket in this case, on February 7, 2001, in the *Jamieson*[3] civil action, Southwestern filed a "Notice of Service," which stated its intent to :

> plac[e] the Receiver on notice that each and every Southwestern Life Insurance Company or Security Life and Trust Insurance Company policy in which the Receivership Estate may have an interest is under investigation for possible fraud in the application process, and that Southwestern Life Insurance Company reserves the right to assert any and all defenses to liability under such policies against the Receiver of any other party. Respectfully, Southwestern Life Insurance Company requests Notice if such policies are to be transferred or affected by these proceedings.

(Doc. No. 111.) Appended to that notice was a letter to the Receiver, by counsel for Southwestern, dated July 13, 2000, acknowledging the Receiver's July 5, 2000 letters and advising that some of the policies referenced therein "have been the subject of similar litigation, declaratory judgments, rescission and/or cancellation." (*Id.*, Exh. 1, p, 7.)

In this litigation, counsel for Southwestern participated in status conferences on March 14, 2001, March 27, 2001, April 4, 2001, and November 19, 2001. The principals in this viatical litigation were indicted in October 2001 and January 2002. The Sixth Circuit noted in its March 17, 2006 decision, that "[t]he Insurers admit[ted] that they were on notice of this general injunction." *Liberte Capital Group,* 462 F.3d at 554. The Circuit also noted that two of the Insurers were owned by the same parent company as Southwestern, Swiss Re. *Id.* at 556.

With the knowledge and involvement by Southwestern early in the proceedings, the Insurers were aware of and proactive in initiating declaratory judgments outside of the

---

[3] *United States v. Jamiesion*, 3:00 CV 7312 (N.D. Ohio).

8

Receivership. What they did not do is seek leave to file declaratory judgments to adjudicate their rights within the litigation *sub judice*. That is the very thing they seek to do now as this litigation, some ten years old, attempts to head into the sunset. While the Court does not deem the Insurers culpable in the sense that they were the root cause of this viatical litigation, there is little doubt they were aware of the of the Receivership as demands were made upon them with regard to these policies. Southwestern's attempt to intervene in this litigation in 2004 was as follows:

> The purpose for which this intervention is sought is solely on the issues concerning the Southwestern Life Insurance policies. It is only recently that Southwestern Life knew or should have known of the interests in this case were so affected by the Receiver. The Receiver is attempting to sell void and canceled policies. This Motion is timely.

(Doc. No. 997, p. 4.)

The Insurers' argument regarding changed circumstances contends they are now forced to take a stand in light of the Receiver's lawsuit against them. To claim at this juncture of the proceedings that they are entitled to assert claims and defenses which they were incapable of asserting previously would be to ignore the litigation attempted outside of the Receivership estate. The language in the blanket injunctions did not forbid the Insurers from requesting leave of the Court to file a declaratory judgment action on those specific issues. *See Liberte Capital Group*, 462 F.3d at 548 ("Both sides in the action before this Court agree that the above orders permit the Insurers to file declaratory actions against the Receiver as the real party in interest for allegedly fraudulently obtained policies held in the Receivership portfolio.") The Insurers' failure to seek such an action in this litigation, when considered with the litigation they pursued outside the Receivership, is a factor which weighs in favor of the Receiver.

The Court must also consider the effect of the Insurers' claims and defenses, if successful, as it pertains to other claimants, namely, the investors. The consequences of lifting

9

this injunction and success of the Insurers on those claims/defenses would be catastrophic upon the investors who suffered, in many cases, a loss of their entire life's savings. At oral argument, counsel for the Insurers conceded that setoffs would adversely effect the total valuation of the assets which form the base of the Alpha Receivership. This aspect is extremely troubling to the Court as the agreement to which Alpha and the Liberte investors ultimately agreed, for purposes of future distributions, would be subject to additional losses. The Alpha investors have thus far been fortunate to recoup 9% of their investments and the Receiver recently advised of his intent not to proceed with another distribution due to a lack of adequate funds. (Doc. No. 2638).

It is within the inherent power of a court to modify its own orders. *In re Saffady*, 524 F.3d 799, 803 (6th Cir. 2008) (citations omitted). The Court is well aware of the rights sought to be asserted by the Insurers as well as the equities which must inform its decision on this matter. *Liberte Capital Group,* 462 F.3d at 552. Having considered the briefing of the parties and oral argument on those issues, the Court finds as follows:

(1) Defenses and/or claims with respect to previously matured policies upon which death benefits have been paid are foreclosed;

(2) Defenses and/or claims with respect to policies which have matured but upon which death benefits have not yet been paid are not foreclosed;

(3) Defenses and/or claims with respect to policies which were not matured at the time of the filing of the action against the Insurers are not foreclosed; and

(4) Defenses and/or claims with respect to policies which were rescinded beyond the contestability period are foreclosed.

**CONCLUSION**

For the reasons stated above, the Insurers' motion for reconsideration (Doc. No. 2526) is granted. The Insurers' motion for modification (Doc. No. 2526) is denied as it pertains to

previously matured policies upon which death benefits have been paid or those policies which were rescinded beyond the contestability period.

      IT IS SO ORDERED.

                                                                                                 s/ *David A. Katz*  
                                                                               DAVID A. KATZ  
                                                                               U. S. DISTRICT JUDGE