IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

LIBERTE CAPITAL GROUP,

                       Plaintiff,                      Case No. 5:99 CV 818

-vs-

                                                  MEMORANDUM OPINION

JAMES A. CAPWILL, et al.,

                     Defendant.

KATZ, J.

      This matter is before the Court on the Receiver's Motion for Direction of Death Benefits (Doc. 2646), Sunset Life Insurance Company's ("Sunset") Opposition (Doc. 2654), the Receiver's Reply (Doc. 2656), and Sunset's Surreply (Doc. 2668); Sunset's Motion to Strike Affidavit of Virginia Hale (Doc. 2674), and for Leave to Take Deposition and the Receiver's Opposition (Doc. 2675); Sunset's Motion for Leave to Intervene (Doc. 2655), the Receiver's Opposition (Doc. 2657), Sunset's Post Hearing Memorandum in Support of its Motion to Intervene (Doc. 2702), the Receiver's Post-Hearing Memorandum (Doc. 2707), Sunset's Reply (Doc. 2717), and the Alpha Capital Group Investor Class's ("Alpha Class") Post-Hearing Brief (Doc. 2721). Sunset seeks to invoke the Court's diversity jurisdiction under 28 U.S.C. §1332.

      The Court will allow Sunset Life to intervene permissively in order to protect its appeal rights and present a claim for declaratory judgment regarding whether the Metoyer Policy is void under the laws of California in place in 1998; the rest of Sunset's Motion to Intervene and its Motion to Strike Affidavit are denied. This Court's injunction against satellite litigation does not bar Sunset's claims against Darryl Adams ("Adams") or the CA Remainder Trust. The Receiver's Motion for Direction of Death Benefits remains open pending the result of Sunset's declaratory judgment claim.

## I. Background

This case is yet one more chapter in the epic salvage of two viatical operations rife with fraud. The assets of those firms have been in a receivership in front of this Court for nearly a decade and the receivership has ceased to operate to collect asserts for reimbursing defrauded investors and begun disbursing proceeds as assets mature. This conflict arises from one of those assets, an insurance policy on the life of one Gerald Metoyer ("Metoyer").

On June 26, 1998, Metoyer, a resident of California, applied with Sunset, incorporated in Missouri, for a $500,000 policy on his life with his brother as beneficiary. Part of his application included a medical examination, though it is uncertain what sort of blood tests, if any, that examination included. Sunset issued the policy in August of that year. In December, Metoyer transferred the policy to the "Remainder Trust," an entity with a New Jersey address. Metoyer informed Sunset of this action in a notarized document entitled "Assignment of Life Insurance Policy as Collateral." However, he also executed a notarized sale of the policy to the Alpha Capital Group, one of the two viatical operations subject to the receivership. Sunset acknowledged the transfer to the Remainder Trust.

The Alpha Capital Group, along with Liberte Capital Group, then collapsed. As a result, the Court placed the assets of both, including the Metoyer Policy, into the Receivership. In 2002, the Receiver informed Sunset of the change and Sunset acknowledged, reiterating, in 2003, that the Remainder Trust remained beneficiary of the Metoyer Policy. The Receiver took over maintenance of the Policy which had passed after Metoyer had assigned it.

In 2008, Metoyer died of AIDS. In February 2009, Adams, on behalf of the CA Remainder Trust, submitted a claim for benefits along with unnotarized documents purporting

2

that Metoyer transferred the Policy to the CA Remainder Trust in 1999.  Despite the CA Remainder Trust bearing a California address, rather than the New Jersey address of the acknowledged beneficiary, Sunset life paid the death benefit the day after it received the claim.  In April, the Receiver sent Sunset a premium payment.  Sunset returned the payment, along with the news that Metoyer had died and the policy had been paid.  The Receiver demanded payment of the death benefit.  When Sunset refused, the Receiver moved for direction of the death benefit.

After opposing direction of benefits, Sunset moved to intervene in this long running action.  Sunset proposed bringing three claims against the Receiver (invalidity of the Policy, invalidity of the Receiver's seizure of the Policy, and restriction of the Receiver's rights in the policy to any debt Metoyer owed the Alpha Capital Group, and thus the Receivership) as well as three claims against Adams and the CA Remainder Trust, neither of which are parties to this action.

Sunset subsequently moved to strike portions of an affidavit of Virginia Hale which authenticates certain documents.  Sunset does not move against the documents, but certain statements it claims are hearsay.  It also asks to depose Ms. Hale, an employee of the Alpha Capital Group's escrow agent and president of the Receiver's current escrow agent.

The Court held a hearing on Sunset's motion to intervene at the beginning of 2010, after which Sunset, the Receiver, and the Alpha Class[1] submitted arguments on intervention and the extent of any intervention allowed.  Sunset seeks to intervene as of right and/or permissively to present its claims and conduct discovery.  The Receiver, acknowledging the procedural black hole

---

[1] The Alpha Class is the class of investors in the Alpha Capital Group, as opposed to Liberte Capital Group, formed to negotiate a settlement between the two groups regarding the method of reimbursement from the Receivership.

3

in which Sunset may find itself, suggests permissive intervention only to present arguments under the policy and to preserve appeal rights, but opposes any of Sunset's claims and any discovery. The Alpha Class opposes any intervention.

## II. STANDARDS OF REVIEW

*A. Intervention*

Intervention under the Federal Rules occurs either as of right or by permission. Fed. R. Ci v. P. 24. Intervention as of right, listed in Fed. R. Civ. P. 24(a), states as follows:

> Upon timely motion, the court must permit anyone to intervene who: ... (2) claims an interest relating to the property or transaction which is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless the existing parties adequately represent that interest.

The Sixth Circuit has adopted a four-part test which must be satisfied in order to establish intervention as a matter of right as follows:

> (1) timeliness of the application to intervene; (2) the applicant's substantial legal interest in the case; (3) impairment of the applicant's ability to protect that interest in the absence of intervention, and (4) inadequate representation of that interest by parties already before the court.

*Stupak-Thrall v. Glickman,* 226 F.3d 467, 471 (6th Cir. 2000) (citations omitted). While the applicant bears the burden of establishing the right to intervene, *Linton v. Comm'n of Health & Env't,* 973 F.2d 1311, 1317 (6th Cir. 1992), Rule 24 is liberally construed and doubts are resolved in favor of the proposed intervenor. *Purnell v. Akron,* 925 F.2d 941, 950 (6th Cir. 1991). Furthermore, a Rule 24(a) inquiry should focus on the particular facts and procedural posture of the application.

4

Permissive intervention under Rule 24(b) requires a timely application showing that "there is at least one common question of law or fact." *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1248 (6th Cir. 1997) (citing *Purnell*, 925 F.2d at 950-51). The timeliness element is the same for both intervention as of right and for permissive intervention. *Stupak-Thrall,* 226 F.3d at 472 (quoting *NAACP v. New York*, 413 U.S. 345, 365 (1973)).

The timeliness aspect of a motion to intervene is "evaluated in the context of all relevant circumstances." *Stupak-Thrall,* 226 F.3d at 472-473 (citing *Jansen v. City of Cincinnati,* 904 F.2d 336, 340 (6th Cir. 1990)). The Sixth Circuit in *Stupak-Thrall* reiterated five factors to be considered in this analysis as follows:

> (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention.

*Id.*

B. *Applicable Law*

Because Sunset seeks to invoke the Court's diversity jurisdiction, the Court must apply state law. In order to apply the correct state law, the Court must apply its forum's choice of law rules. *Miller v. State Farm Mut. Auto. Ins. Co.*, 87 F.3d 822, 824 (6th Cir. 1996) (citation omitted). Ohio has adopted the Restatement (Second) of the Conflict of Laws. *Id.*

In particular, Ohio has directly adopted §188, the general section concerning contracts which considers, *inter alia*, "(d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties."

5

*Nationwide Mut. Ins. Co. v. Ferrin*, 487 N.E.2d 568, 570-71 (Ohio 1986) (quoting the Restatement (Second) of the Conflict of Laws). Further, §192 states that a life insurance contract is subject to the laws of the state where the insured lived when the contract was formed. Metoyer, the insured, lived in California from before he applied for the Policy until his death. Even if this Court must apply §188 instead of §192, Metoyer was the subject matter of the contract as well a party. Sunset can only apply one factor in favor of any place other than California. Thus, the Court finds that California law governs the Policy. Because Sunset and Metoyer agreed on the contract in 1998, the Court further finds that the parties must apply California law in place in that year in determining the law of the Policy, both defenses within it and whether it was void when formed.

The parties have only dealt with the law of California briefly, instead focusing on substantive law not applicable to the Policy. Sunset relies on an old Supreme Court decision describing a New York contract, presumably under an alleged federal common law against wager policies. *Warnock v. Davis*, 104 U.S. 775 (1881). The Alpha Class then notes a later Supreme Court case dealing with Tennessee law on transfer of life insurance which seems to mitigate *Warnock*. *Grigsby v. Russell*, 222 U.S. 149 (1911). Both of these arguments fail to describe <u>California</u> law in light of *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938). *Griffin v. McCoach*, 313 U.S. 498, 503 (1941). Similarly, the Receiver relies on the Sixth Circuit's recent pronouncement that wet ink policies are merely voidable, rather than void. *Wuliger v. Manufacturers Life Ins. Co. (USA)*, 567 F.3d 787, 797 (6th Cir. 2009) (citations omitted) ("*ManuLife*"). However, this argument ignores the Circuit's express statement that it was considering <u>Ohio</u> law. *Id*.

6

### III. DISCUSSION

Sunset seeks to intervene not only to present rights and arguments initiated by the parties already in this case (defenses under the Policy against the Receiver's Motion for Direction of Death Benefits), but also to assert six causes of action not already in this case. The Sixth Circuit has explicitly stated that "a party seeking to intervene need not possess standing necessary to initiate a lawsuit." *Purnell*, 925 F.2d at 948 (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 536-39 (1972)). However, this does not mean that the ability to intervene replaces the need for standing completely; for example, successful intervention does not give standing to appeal when the party with standing declines. *Diamond v. Charles*, 476 U.S. 54, 64 (1986). Thus, intervention allows entry into a dispute between parties with standing by a party without standing, but nothing says that it satisfies the standing requirement where two parties have not yet done so. This is especially powerful in the present situation because Sunset's claims are essentially one or two separate suits that it seeks to interject into an ongoing suit, not merely claims dependant upon the current ongoing suit.

Standing has both constitutional and prudential requirements. *ManuLife*, 567 F.3d at 793 (citations omitted). The constitutional prerequisites include the requirement that a favorable decision redress the injury the proponent asserts. *Id*. Sunset's third cause of action, seeking a declaration that the Receiver retains only a creditor's rights in the Metoyer Policy, fails this test. Sunset's proposed injury would be the loss of any money in excess of some determined debt Metoyer owed the Alpha Capital Group or the Remainder Trust. However, even if the Receiver's rights are so restricted, Sunset would have to pay out the whole amount of the policy and the rightful beneficiary would then retrieve the balance from the Receiver. The collateral assignment which Sunset relies on to assert the possibility of some debt for which the Metoyer Policy served as collateral also states that the assignee received the "sole right to collect from the Insurer the net

7

proceeds of the Policy[2]." Doc. 2654-3 at 1. Thus, even if the Court finds that the Receiver is only due part of the proceeds, Sunset would still have to pay the Receiver the full amount, seeing no reduced injury from the successful adjudication. Therefore, Sunset has no standing to raise its second claim, even if it has a right to be in this case as an intervenor[3].

One of the prudential standing requirements states that a party may only assert its own rights and not the rights of another. *ManuLife*, 567 F.3d at 793 (citations omitted). Sunset's second cause of action asserts that the Receiver improperly seized the Metoyer Policy. This right belongs to whatever other beneficiaries there may be, not Sunset. Therefore, Sunset has no standing raise this claim.

Sunset's first claim clearly satisfies all of the elements of standing. Its claims against Adams and the CA Remainder Trust require this Court's supplemental jurisdiction under 28 U.S.C. §1367, so it will only be able to present those claims here if its first claim survives.

Before considering the particular tests for either form of intervention, the Court must determine if Sunset filed a timely motion. The first *Stupak-Thrall* factor, the point to which the suit has progressed, weighs heavily against intervention: after many years, the Receivership has finally entered a distribution phase. The second factor, purpose of intervention, weighs in favor of intervention: Sunset seeks to present rights which might be difficult to present in other avenues and seeks a determination of rights between two potential beneficiaries in one action, rather than two separate actions.

---

[2] Further, there is California law stating "[t]he right of one to whom a policy of life insurance is assigned by another, as security either for his own debt or for the debt of a third person, to collect from the insurance company the whole amount of the policy ... cannot be doubted." *Bridge v. Connecticut Mut. Life Ins. Co.*, 141 P. 375, 377 (Cal. 1914).

[3] Or if it would have the right to intervene in a case where someone with standing had raised that claim.

8

The third factor, length of time Sunset knew or should have known of its interest in the case, weighs against intervention.  Sunset received notice of a transfer in 1998, just four months after issuing the Metoyer Policy.  Then it received notice of the Receiver's claim to the policy in 2002.  Even if these two facts do not demonstrate that the Policy was a wet ink policy[4], Sunset's primary argument for voiding the Policy, they do raise concerns that a reasonable insurer would have investigated.  Sunset claims that it did not know of the fraud[5], but it waited the better part of a decade, and after it paid on the policy once, before investigating the legitimacy of Metoyer's interest in the Policy.  Further, this Court has already rejected the claim that an insurer was "in the dark about [possible] shenanigans because [it] did not police [its] policies after issuance" and was "[un]aware of any problems until ... the death of the viator."  *Liberte Capital Group v. Capwill*, 630 F.Supp.2d 835, 840 (N.D. Ohio 2009).

The fourth factor, prejudice to the original parties caused by the intervention, weighs against intervention.  Not only have the parties, especially the Alpha Class, relied on the uncontestability of the Metoyer Policy for years, but the litigation Sunset seeks to inject into this action would place costs on the Receivership assets.  These assets fund the reimbursement of the defrauded investors of the Alpha Class.  Finally, the fifth factor, unusual circumstances, weighs against intervention.  Sunset claims that the fraud of Adams and the CA Remainder Trust weighs in favor of intervention, but the obvious issue raised by Adams' request for death benefits

---

[4] A wet ink policy is one taken out by an individual on his or her own life for the purpose of selling the policy, at something less than face value, to an investor.  The Metoyer Policy presents an odd case, because such sales usually occur immediately after issuance of the policy (days usually) and Metoyer sold his months later.  Metoyer's intention to sell at the time of initiating the Policy is one fact Sunset may have to prove in order to void the Policy.

[5] The Receiver has presented evidence that Sunset did in fact know of the fraud, but the Court need not address that evidence or any procedural questions the timing of its submission raises due to other factors.

9

(conflicting addresses of California and New Jersey trusts) combined with the haste of Sunset's first payment of death benefits (within one day) demonstrating a lack of care by Sunset weighs against, rather than for, Sunset's attempt to address its own sloppiness here and now.

Because most of the *Stupak-Thrall* factors weigh against intervention, the Court finds Sunset's motion untimely for both intervention as of right and permissive intervention.

Sunset also raises equitable concerns regarding its due process rights and its ability to appeal any determinations by this Court other than its intervention motion. In response to these concerns, and with the Receiver's approval, the Court would grant permissive intervention, at least to a limited extent.

A district court overseeing assets placed in a receivership has broad equitable powers to control claims brought against those assets. *Liberte Capital Group v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006) ("Swiss Re"). The Sixth Circuit has upheld this Court's stay against outside litigation against the receivership assets. *Id.* Further, the Court has already listed four categories of claims setting forth whether such claims may be allowed under a litigation exemption to that stay: (1) parties may not litigate "matured policies upon which death benefits have been paid;" they may litigate (2) unpaid matured policies and (3) unmatured policies, but not (4) "policies which were rescinded beyond the contestable period." *Liberte*, 630 F.Supp.2d at 842.

The Receiver asks the Court to allow Sunset to intervene permissively, but only to present defenses under the Policy (what it calls "coverage defenses"); Sunset would like to present the argument that the Policy was void when formed (what the Receiver call "validity defenses"). The Receiver appeals not only to the Court's litigation exceptions, but also to the reliance of the Alpha Class and the burden of the cost of litigating falling on the Receivership assets.

With regard to the language of the Court's litigation exceptions, the Receiver presents two arguments: Sunset falls within situation (1) by having paid Adams and situation (4) prevents any

10

"validity challenges" (or, at least, it should). Neither correctly interprets the Court's language. Even though Sunset has paid someone under the matured Metoyer Policy, the order in which the Court issued that litigation exception language dealt with an insurer trying to recover money paid <u>to the Receivership</u>, or to set off future benefits against such money. *Id.* The Court wrote situation (1) to prevent such action, not to address an insurer that had negligently paid benefits owed the Receivership to someone else. The Receiver reads situation (4) to prevent recision attempts, presumably believing that it should be read that "claims <u>for</u> recision beyond the contestability period are foreclosed." However, that was not what the Court said. Situation (4) protects the Receivership from suits for refund of refunded premiums should an insurer attempt to undo a recision and prevents the Receiver from protesting recision after the fact. Due to the state of the Receivership, the Receiver also asks the Court to amend situation (4) to meet its reading, thereby barring all "validity claims" on policies it holds. While the Court shares the Receiver's concern, the state of the Receivership has changed little in the time since the Court handed down situation (4) to cause the Court to reconsider the litigation exception.

Thus, Sunset will be allowed to present both defenses under the Policy and an attack upon the validity of the Policy under California law in place when the Policy was issued and sold. However, the Receiver's concerns over the resources of the Receivership and the reliance of the Alpha Class, concerns shared by the Court, remain. To address these concerns, Sunset and the Receiver must address the law of California in place in 1998, the law governing the validity of the Policy, before any discovery takes place. The Court must first know if Sunset's legal theory even holds water before allowing any significant depletion of the Receivership assets by discovery. The Court will also restrict any factual discovery with an eye to weighing the benefit of any request against the cost to the receivership. Further, because the Receivership remains an equity

11

entity, the Receiver will retain any and all equitable defenses including laches, equitable estoppel, and unclean hands.[6]

Sunset also moves to strike one of the affidavits for hearsay. None of the passages Sunset notes contain statements offered for the truth of the matter asserted, but rather are actions. Further, the portions Sunset attacks have little to do with the affidavit authenticating the attached documents. Thus, the Court sees little reason to strike the affidavit. However, Sunset may have a right to depose Virginia Hale, the affiant, should it convince the Court of its need for factual discovery (for example, by surviving dismissal of its claim due to unsustainability under California of 1998), the Receiver will make her available for deposition.

Finally, Sunset raises concerns as to the injunction against satellite litigation at issue in *Swiss Re*. That injunction related to outside attacks on assets of the Receivership, especially those not including the Receiver. No part of the complaint Sunset proposes against Adams or the CA Remainder Trust implicates the injunction. Thus, Sunset is free to pursue those claims. However, the Court declines to extend its permission to present Sunset's first cause of action to those against Adams and the CA Remainder Trust or to exercise its supplemental jurisdiction over those cases. That litigation has little connection to Ohio and only indirect connection to the Receivership and might tax sparse resources; Sunset should pursue Adams and the CA Remainder Trust elsewhere to recoup the invalid payment.

### IV. CONCLUSION

For the foregoing reasons, Sunset's Motion to Intervene (Doc. 2655) is granted to the extent that it will be allowed to present a claim for declaratory judgment that the Metoyer Policy

---

[6] The Court also notes that much of the case presented for intervention may weigh heavily in judging such defenses.

12

is void, rather than voidable, under the laws of California existing in 1998, subject to any equitable defenses, including laches, equitable estoppel, and unclean hands; Sunset has not presented any other claims which it may inject into this case. Sunset may pursue claims against Adams and the CA Remainder Trust under the satellite litigation bar. Sunset is granted until January 18, 2011 to file said complaint.

The parties are to present the Court with arguments as to whether this declaratory judgment action should be dismissed. Sunset's Motion to Strike the Affidavit of Virginia Hale (Doc. 2674) is denied, but the Receiver will make her available for deposition if Sunset's declaratory judgment action survives dismissal arguments; at that time, Sunset will be free to pursue other, limited factual discovery with leave of Court. The Receiver's Motion for Direction of Death Benefits (Doc. 2646) remains open pending the resolution of Sunset's declaratory judgment action and subject to any defenses under the policy.

IT IS SO ORDERED.

    s/ *David A. Katz*
    DAVID A. KATZ
    U. S. DISTRICT JUDGE