IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

LIBERTE CAPITAL GROUP,

                Plaintiff,                Case No. 5:99 CV 818

    -vs-

                                                   MEMORANDUM OPINION

JAMES A. CAPWILL, et al.,

                Defendant.

KATZ, J.

This matter is before the Court on the Receiver's Motion for Direction of Death Benefits, (Doc. No. 2646), the Receiver's Motion to Dismiss the Complaint of Intervenor Sunset Life Insurance Company ("Sunset") (Doc. No. 2776), and Sunset's Motion for Leave to File First Amended Complaint (Doc. No. 2806). The Court notes diversity jurisdiction under 28 U.S.C. §1332 and proper venue under 28 U.S.C. §1391. For the reasons stated below, the Receiver's motions will be granted and Sunset's motion will be denied as futile.

**I. BACKGROUND**

Given the procedural stance of this matter, the Court will consider the facts as presented by Sunset's Complaint (Doc. No. 2754) and the proceedings in this case, especially this Court's decision granting permissive intervention: *Liberte Capital Group v. Capwill*, 2011 WL 11480 (N.D. Ohio). *Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010) (on motion to dismiss, Court "may take judicial notice of other court proceedings") (*citing Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 567 (6th Cir. 2008)). The Court will also note additional assertions Sunset wishes to make in its proposed Amended Complaint where appropriate.

The conflict at issue arises in the context of the collapse of three viatical investment companies which are now in Receivership. Viatical investment companies serve as middlemen between investors and those with life insurance policies they no longer need. The viatical investment company solicits

investments with which it purchases insurance policies at a fraction of face value and uses leftover funds to pay premiums on the policies. Investors are matched to policies and collect a portion of the payout when the insured dies. The idea behind the practice is to provide end-of-line funds to insureds who might otherwise allow policies to lapse (perhaps because they no longer need to plan for dependants who are no longer dependant). The practice has also drawn large amounts of fraud, both in falsifying application materials and in the sale of policies that only exist for the purposes of sale, rather than as extant unneeded policies.

The policy at issue (U0239213 hereafter the "Policy" or the "Metoyer Policy") insured the life of one Gerald Metoyer ("Metoyer"), a resident of California, for $500,000. Sunset issued it on August 24, 1998. As part of his application Metoyer denied having either AIDS or HIV. Sunset requested a medical examination which included a blood test. Sunset accidentally attached only a portion of the result to its original complaint and fixing this error was one of the reasons it sought to amend; as such the Court will consider the whole report, which indicated that Metoyer tested negative for HIV antibodies.

Sunset asserts that Metoyer used an imposter to pass this test (which required the submission of his driver's license) and that he had AIDS at the time of this test. It further asserts signature inconsistencies, though which documents were allegedly inconsistent with which other documents changed between the original Complaint (application compared with medical test forms) and the proposed Amended Complaint (medical test forms compared to driver's license). Also in the proposed Amended Complaint, Sunset notes that it initially denied insurance due to a DWI record related to Metoyer's driver's license. After receiving notice that Metoyer's record was cleared because he was the wrong person, Sunset issued the Policy.

Metoyer sold the policy to the Alpha Capital Group ("Alpha"), one of the companies now in Receivership, in December 1998. On December 15, 1998, Sunset received a document assigning the Policy to the "Remainder Trust," a New Jersey entity; this document was signed by both Metoyer and his

2

brother, the original beneficiary. Both the sale and the document informing Sunset were notarized.

Alpha, along with the other two viatical companies, then collapsed and entered the Receivership. As a result, the Receiver acquired absolute title to all of the policies Alpha had owned, including the Metoyer Policy. Sunset received and acknowledged notice of the Receivership and the Receiver's interest in the Policy; it also collected premiums from the Receiver.

In February 2009, Sunset received notice from one Darryl Adams ("Adams") that Metoyer had died on October 24, 2008. The death certificate listed AIDS (and that Metoyer had suffered from it for years) as one of the causes of death. Adams demanded benefits under the Metoyer Policy on the behalf of the "CA Remainder Trust," a California entity clearly listing a different address from that of the Remainder Trust. Adams also provided flawed, unnotarized documents purporting to transfer interest in the Metoyer Policy to the CA Remainder Trust in 1999. Sunset paid Adams as trustee of the CA Remainder Trust in less than a week.

Sunset then returned the Receiver's April 2009 premium payment, noting payment on the policy. The Receiver, having just learned of Metoyer's death, reminded Sunset that he owned the Metoyer Policy and demanded payment. After Sunset refused, the Receiver filed his Motion for Direction of Death Benefits. Sunset opposed the Motion and moved to intervene. Originally, Sunset sought to challenge not only the validity of the Policy, but also the Receiver's rights in it. In addition, Sunset sought to recover against Adams and the CA Remainder Trust in this action.

The Court found Sunset's Motion to Intervene untimely, but in part due to the Receiver's urging, allowed permissive intervention to assert coverage defenses and claim that the Policy is void, rather than voidable. The Court also ruled that the substantive law of California in effect when the Policy was issued would govern Sunset's claims and emphasized that such claims would be subject to equitable defenses.

Sunset filed its Intervenor Complaint asserting that the Policy is invalid due to California's Imposter (Count I) and Insurable Interest (Count II) laws. The Receiver moved to dismiss asserting that

3

Sunset's claims fail due to the statutes of limitations, waiver, laches, and estoppel due to Sunset's delay in contesting the validity of the Metoyer Policy. The Receiver also objects to Count I, claiming it is beyond the scope of the intervention the Court permitted, asking the Court to strike that count if it is not dismissed. Finally, the Receiver asserts that Sunset failed to plead claims on which relief may be granted under the 1998 California law. Along with its opposition, Sunset requested leave to amend its Complaint with an eye to fixing one document error and augmenting the factual assertions.

## II. MOTION TO DISMISS STANDARD

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a lawsuit for "failure to state a claim upon which relief can be granted." Courts must accept as true all of the factual allegations contained in the complaint when ruling on a motion to dismiss. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). To survive a motion to dismiss under Rule 12(b)(6), "even though a complaint need not contain 'detailed' factual allegations, its 'factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.'" *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, *Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. *Twombly*, 550 U.S. at 555 (stating that the complaint must contain something more than "a formulaic recitation of the elements of a cause of action"). A complaint must state sufficient facts to, when accepted as true, state a claim "that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (explaining that the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully" and requires the complaint to allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct).

In conjunction with this standard, the Court is cognizant that Fed. R. Civ. P. 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts

are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. at 93 (*citing Twombly*, 550 U.S. at 596); *see also Sensations, Inc. v. City of Grand Rapids,* 526 F.3d 291, 295-96 (6th Cir 2008). The Court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

### III. ANALYSIS

*A. California Substantive Law*

Under California law in effect when Sunset issued the Policy, any life insurance policy "procured or caused to be procured upon another individual is void unless the person applying for the insurance has an insurable interest in the individual insured at the time of the application." Cal. Ins. Code § 10110.1(e) (1998) (2009 amendment moved provision to Cal. Ins. Code § 10110.1(g)). Sunset also attempts to rely on current California insurance law prohibiting the use of "[a]ny device, scheme, or artifice designed to give the appearance of an insurable interest where there is no legitimate insurable interest." However, that law was passed in 2009 - after the policy became effective, later than the law the Court already stated would govern Sunset's assertions, and after Metoyer died. Cal. Ins. Code § 10110.1(e) (effective July 1, 2010). Thus, the pertinent California law allows for an insurable interest in any policy a person takes out on his or her own life, regardless of any present intent to sell the policy.[1] In an attempt to defeat this conclusion, Sunset relies on two district court cases. Just last year, a California district court denied insurable interest based on a present intent to transfer, but relied on the inapplicable current version of the statute to do so. *Hartford Life & Annuity Ins. Co. v. Doris Barnes Family 2008 Irrevocable Trust*, 2011

---

[1] The Receiver notes that Metoyer's delay in actually selling the Policy will make it difficult for Sunset to prove device, but that is a factual question beyond the scope of this stage of the proceedings.

WL 759554 at *4 (C.D. Cal.). Sunset also points to a New Jersey district court case which considered California law, but the statement Sunset cites is both dicta and unpersuasive in light of California's intent to change its policy to that position but only as of July 1, 2010. *Lincoln Nat'l Life Ins. Co. v. Calhoun*, 596 F.Supp.2d 882, 889 (D.N.J. 2009).

Therefore, so long as Metoyer applied for the Policy in 1998, it had insurable interest. Sunset's Complaint contains one small implication that Metoyer may not have been the applicant (Complaint ¶ 7), but as this contradicts other assertions specific to Sunset's insurable interest claim (Complaint ¶¶ 26, 31), Sunset has not pressed this theory or placed it in legal context, and the theory remains, at best, speculation. The Court will consider Metoyer to be the legal applicant. Because Metoyer had an insurable interest in his own life when he allegedly applied for the Policy, there is an insurable interest. Cal. Ins. Code § 10110.1(b) (effective 1990).

Sunset also notes the California law voiding "gaming or wagering" policies. Cal. Ins. Code § 252. However, no policy is void as a gaming or wagering contract if there is insurable interest. *Paul Revere Life Ins. Co. v. Fima*, 105 F.3d 490, 493 (9th Cir. 1997). Therefore, Count II of Sunset's Complaint concerning insurable interest and wagering does not contain any legal theory under which relief may be granted.

The Receiver not only claims that Count I (Imposter) of Sunset's Complaint should not be permitted, but fails to state facts sufficient to state a claim. First, when the Court permitted intervention, it did not limit Sunset to insurable interest claims, but to "claim[s] for declaratory judgment that the Metoyer Policy is void, rather than voidable." *Liberte*, 2011 WL 11480 at *7. While the Imposter statute does not address insurable interest, it does state that it would cause a contract to be "void from its inception." Cal. Ins. Code § 10113.5(b). Further, Sunset's proposed Amended Complaint addresses the fact issues presented by the Receiver, most notably by clarifying the time line regarding the application and issuance of the policy compared with the enactment of California's Imposter statute and by fixing the

6

mistakenly incomplete document attached to the original Complaint. As such, the Court finds that Sunset has identified a law in effect at the time it issued the Metoyer Policy which might make the Policy void *ab initio*. The Court must now consider whether Sunset has the right to assert a claim under this law.

*B. Equitable Defenses and Statute of Limitations*

As the Court noted in the decision granting intervention, "[a] district court overseeing assets placed in a receivership has broad equitable powers to control claims brought against those assets." *Liberte*, 2011 WL 11480 at *6 (citing *Liberte Capital Group v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006)). Thus, as part of allowing intervention, the Court specifically stated that the Receiver would have access to a host of equitable defenses. *Id.* at *7. The Court also noted that because Sunset's intervention petition was untimely, these defenses may prove powerful. *Id.* at *7n6. Relying on this, the Receiver has asserted not only that Sunset's claims fail due to statutes of limitations, but also that waiver, estoppel, and laches, equitable defenses which are often heavily fact dependant, may apply, even at the dismissal stage.

As an initial matter, the parties dispute the impact of the Court's statements that equitable defenses would be available and that the substantive law of California would apply. The Receiver attempts to apply Ohio statutes of limitations and Sunset responds with California law rejecting the use of statutes of limitations in such actions. Sunset also asserts that California rejects laches, waiver, and estoppel in such situations, an assertion the Receiver claims this Court's order granting intervention overrules. The Court need not address any of these points because Sunset's claim that California law rejects application of waiver in this case fails. Further, Sunset's only response to any of the equitable defenses, as opposed to its attempt to show that they do not apply, concerns the letter from Robert Ritchie and whether that letter was sufficient for notice. As the letter is not necessary for a finding of waiver, the Court will disregard it.

Under California insurance law, "[t]he right to information of material facts may be waived, either (a) by the terms of insurance or (b) by neglect to make inquiries as to such facts, where they are

7

distinctly implied in other facts of which information is communicated." Cal. Ins. Code § 336. Further, "[a] person may waive the advantage of a law intended for his or her benefit." *Bickel v. City of Piedmont*, 946 P.2d 427, 431 (Cal. 1997) (superseded by statute on other grounds). Waiver may be found where a party knows of a right and either expressly repudiates that right or acts in a way inconsistent with the intent to exercise that right. *Id.* at 435.[2]

Sunset relies on the *Bickel* court's statement that "a law established for a public reason cannot be waived" to argue that waiver does not apply. *Id.* at 431 (internal quotation omitted). It also points to a California statute stating that waiver does not apply to "a law established for a public reason." Cal. Civ. Code § 3513. However, Sunset neglects to actually present any public reason beyond its repeated references to the public *policy* concerning wagering contracts. At no point does it demonstrate how public policy is equivalent to "public reason." In fact, public policy is not the correct inquiry, but "public benefit" and "whether that benefit is merely incidental to the legislation's primary purpose." *Bickel*, 946 P.2d at 432. Not only has Sunset failed to present any such public benefit, but the Receiver has noted that the provision was presented to the legislature by a California committee of insurers as protection against just the sort of fraud Sunset alleges Metoyer committed. *See e.g.*, CA B. An. S.B. 1706 Sen., 4/29/1998. Though the law might also protect insurance customers from higher premiums, Sunset does not present any argument either as to how this is more than incidental public benefit or as to how that benefit is public rather than specific. Thus, the Court determines that the California Imposter statute (Cal. Ins. Code § 10113.5(b)) is subject to waiver.

Sunset has presented no arguments that, if waiver applied, it did not waive any rights. Even if it did (or its failure did not constitute admission, as the Receiver proposes), the allegations of the Complaint

---

[2] Ohio law is similar, but goes even further: "[w]aiver is a voluntary relinquishment of a known right and is generally applicable to all personal rights and privileges, whether contractual, statutory, or constitutional." *Glidden Co. v. Lumbermens Mut. Cas. Co.*, 861 N.E.2d 109, 118 (Ohio 2006) (citations omitted)

(and the proposed Amended Complaint) clearly demonstrate waiver. First, Sunset waived any right to assert that the blood test demonstrates that Metoyer sent an imposter. Without regard to anything that happened between that test and receipt of Adams' demand on the policy, that demand came with a death certificate indicating that Metoyer had been afflicted with AIDS for years prior to his death. A reasonable insurer would have taken that opportunity to investigate Metoyer's health at the time of the blood test (which Sunset has since done and found evidence that might have justified denial) prior to paying on that demand. Instead, Sunset immediately paid the claim. It was on notice of the possibility of blood work shenanigans and chose to pay rather than investigate.

Sunset's assertion of evidence relating to Metoyer's signatures also fails. The allegations from the original Complaint do not note any signature which Sunset did not have a copy of prior to issuing the Policy. It could have compared them then and instead issued the policy, again waiving its rights. The proposed Amended Complaint seeks to avoid this result by resting on Metoyer's driver's license signature. However, the proposed Amended Complaint also notes that Metoyer's driver's license also raised the issue of a DWI which initially prevented issuance of the Policy. The DWI issue was answered by a court finding that Metoyer was not the person sought. However, this should have raised a question of imposter with regard to the license at issue, without regard to whether Sunset should have compared signatures at that time or at least obtained a copy of the license presented for the blood work. And Sunset, rather than further investigate Metoyer's license, issued the policy.

Further, the Court notes that Sunset does not mention Adams in its complaints or opposition (Doc. No. 2804). However, the issues of Adams' payment have been repeatedly and thoroughly raised in the prior proceedings on this issue. The Court also notes that the weak investigation into Adams' claim, which missed obvious evidence that something was afoot (prominent different addresses on the trust documents), may have waived any right Sunset possessed to investigate the Metoyer Policy at all.

Finally, even if Sunset's Insurable Interest claim held any water, it too would have been waived.

9

Just as in the Imposter case, Sunset refers only to public policy, if at all, rather than public benefit. Furthermore, the Court has already noted the weakness of the argument that insurers were unaware of the issues with their policies until time came to payout. *Liberte Capital Group v. Capwill*, 630 F.Supp.2d 835, 840 (N.D. Ohio 2009).

Therefore, Sunset has waived both of its claims based on the face of the Complaint (and the proposed Amended Complaint). As such, the Court need not consider the disputes the parties raise with regard to statutes of limitations, laches, or estoppel.

Because Sunset has no viable claims, the Court will dismiss the Intervenor Complaint. The Court considered the changes proposed by Sunset for its attempt to amend the Complaint where appropriate and, since the changes also fail to state any viable claim, they are futile. Sunset no longer has any defense against payment under the Policy (given the opportunity to present coverage defenses, Sunset presented only validity challenges) so the Court will grant the Receiver's Motion for direction of Death Benefits.

### IV. CONCLUSION

For the reasons discussed herein, the Receiver's Motion to Dismiss Sunset's Intervenor Complaint (Doc. No. 2776) is granted. Sunset's Motion for Leave to File First Amended Complaint (Doc. No. 2806) is denied as futile. The Receiver's Motion for Direction of Death Benefits (Doc. No. 2646) is granted.

Sunset Life Insurance Company is directed to release all proceeds relating to Policy No. U0239213 insuring Alpha Viator Gerald Metoyer to the Receiver forthwith, specifically, death benefits and all premiums accruing after Metoyer's death, plus interest.

IT IS SO ORDERED.

    S/ *David A. Katz*
DAVID A. KATZ
U. S. DISTRICT JUDGE